IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| ANTHONY J. ALFIERI-CRISPIN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:15-cv-608-AJT-MSN |
| LI TING, | ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Anthony J. Alfieri-Crispin's ("Plaintiff") Motion for Default Judgment ("Mot. Default J.") (Docket no. 18) for the unlawful transfer of internet domain name <x3.com>. Having reviewed Plaintiff's Memorandum of Law in Support, Complaint, and the exhibits attached thereto, the Magistrate Judge makes findings as follows and recommends that default judgment be entered in Plaintiff's favor against domain name <x3.com>.

**I.   Background**

On May 28, 2015, Plaintiff filed a Verified Complaint ("Compl.") for the unlawful transfer of domain name <x3.com> in violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(2), seeking *in rem* injunctive relief in the form of a transfer of the domain name into the ownership and control of Plaintiff. (Docket no. 1).[1] On May 28, 2015, Plaintiff sent a copy of the Complaint, attached exhibits, and

---

[1] Plaintiff seeks default judgment only as to his ACPA claim and requests the Court dismiss without prejudice the remainder of the claims alleged in his Verified Complaint. Accordingly, the Magistrate Judge addresses only Plaintiff's ACPA claim.

notice of intent to proceed *in rem* to the postal and email addresses included in the WHOIS domain name registration records pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa). Declaration of Jonathan Westreich in Support of Motion for Order of Publication ("Westreich Decl. 1") ¶ 2 (Docket no. 6-1); Compl. ¶ 13. On June 19, 2015, this Court granted Plaintiff's Motion for Leave to Serve Process by Email and Publication (Docket nos. 5, 14), and, on June 24, 2015, Plaintiff caused a copy of the Court's Order to be published in *The Washington Times* pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb). Affidavit of Publication ("Publication Aff.") (Docket no. 15); Declaration of Jonathan Westreich in Support of Request for Entry of Default ("Westreich Decl. 2") ¶ 2 (Docket no. 16).

Per the Court's published Order, any answer or response to the Complaint was due within twenty days of the date of publication. No answer or other responsive pleading has been filed, and, on August 5, 2015, the Clerk entered the default of Defendant Li Ting *in re* x3.com. (Docket nos. 17, 21). On July 22, 2015, Plaintiff filed the instant Motion for Default Judgment. On August 6, 2015, no representative for Defendant or an interested party appeared at the hearing on this Motion, and the undersigned Magistrate Judge took the matter under advisement.

**II.    Facts**

The following facts are established by Plaintiff's Complaint and the exhibits attached thereto.

Plaintiff Anthony J. Alfieri-Crispin is an individual and has a principal place of business in Seattle, Washington. Compl. ¶ 3. Plaintiff purchased the domain name

<x3.com> on May 31, 1995, has continuously owned the domain name since its initial registration, and has renewed his ownership through January 23, 2016. Compl. ¶¶ 17, 28 & Ex. B. The registry for this domain name is VeriSign, Inc., located in Dulles, Virginia. Compl. ¶ 5. Plaintiff maintains an account with registrar Dream Host for control and management of the domain name. Compl. ¶ 20.

Plaintiff is in the business of domain monetization and purchases domain names to make a profit from click-through internet traffic and domain name sales. Compl. ¶ 18. Since its acquisition, Plaintiff has used the <x3.com> domain name in his domain monetization business and its loss has deprived Plaintiff of the income regularly generated by the domain name. Compl. ¶¶ 18-19. The market value of the domain name is over $250,000 and possibly over $1,000,000. Compl. ¶ 19. Plaintiff has used the <x3.com> domain name in commerce for more than twenty years and has developed common law rights in the corresponding mark. Compl. ¶ 18. Plaintiff has also used the domain name as his primary email address and method of communication with clients, friends, and family. Compl. ¶ 18.

On April 5, 2015, an unknown individual stole the password to Plaintiff's Dream Host account and altered the domain name registration record for <x3.com>. Compl. ¶¶ 22, 30-31. Plaintiff alerted the registrar that the domain name had been stolen. Compl. ¶ 34. On April 6, 2015, someone submitted a fraudulent Form of Authorization and initiated a fraudulent email request for transfer of the domain name away from Plaintiff's Dream Host account to a different account operated by registrar eName.com. Compl. ¶¶ 34-37. After the theft, Chinese brokers listed the domain name for sale on the domain

name market and the domain name was offered for sale on the gaining registrar's sales platform. Compl. ¶ 42. On April 24, 2015, counsel for Plaintiff arranged for the gaining registrar, eName.com, to place a lock on the domain name in order to prevent further loss or transfer pending resolution of the instant action. Compl. ¶ 44.

As set forth in the WHOIS registry database search attached to Plaintiff's Complaint (Compl. Ex. A), the new registrant "Defendant Li Ting" resides at an unlisted address on Zhonggouhenanzhengzhoushi Street in Zhengzhoushi, Henan, China, 450000, with the email address <christina132@outlook.com> and telephone number +86 156 3975 9708. Compl. ¶ 4. Plaintiff asserts that this information is not legitimate as the postal address, which conflates a street name with the city and state names, could not be located. Compl. ¶ 4 n.1. In addition, the individual's identity could not be verified. Mot. Default J. Hr'g, Aug. 6, 2015 (Docket no. 22).

Plaintiff alleges that the new registrant, whoever it may be, has taken control of the domain name with the intent to profit from redirecting the income produced by <x3.com> and by reselling the domain name, valued up to $1,000,000. Compl. ¶ 23. Because of these actions, Plaintiff has been prevented from using and exercising control over the domain name and is being harmed through the loss of income regularly generated by <x3.com>. Compl. ¶¶ 2, 19.

### III. Jurisdiction and Venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal statute. There is *in rem* jurisdiction over the domain name <x3.com> pursuant to 15 U.S.C. § 1125(d)(2)(A), as the domain name violates Plaintiff's

trademark, and Plaintiff cannot find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1). Venue is proper pursuant to 15 U.S.C. § 1125(d)(2)(A) and (C) because the registry for the domain name, VeriSign, Inc., is located within this Court's judicial district. And, as described above, Plaintiff has properly perfected service by complying with all of the requirements set forth in 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb).

**IV.  Standard**

Default judgment is appropriate if the well-pled allegations of the complaint establish a plaintiff's entitlement to relief and the defendant has failed to plead or defend within the time frame contained in the rules. Fed. R. Civ. P. 55; *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). By defaulting the defendant admits the plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting the factual allegations in complaint). Here, no responsive pleadings have been filed; therefore, the well-pled allegations contained in the Complaint are deemed admitted.

**V.  Discussion and Findings**

Having examined the record, the Magistrate Judge finds that the well-pled allegations of fact contained in the Complaint and supported by Plaintiff's declarations, exhibits, and Memorandum of Law in Support establish that the new registrant's ownership and use of the domain name <x3.com> violate the Anti-Cybersquatting

Consumer Protection Act. Accordingly, the Magistrate Judge finds that Plaintiff is entitled to the relief requested in his Motion for Default Judgment, namely the transfer of the domain name <x3.com> to Plaintiff.

As a preliminary matter, the ACPA protects both registered and unregistered common-law marks. Plaintiff initially registered the <x3.com> domain name and used it in commerce for more than twenty years establishing common law trademark rights in the corresponding marks. Therefore, in this default judgment context the Magistrate Judge finds that Plaintiff possesses common-law trademark rights in a distinctive mark that corresponds with and is identical to the domain name <x3.com>.

As the owner of a protected mark, to establish an anticybersquatting violation Plaintiff must allege that the registrant "(i) has a bad faith intent to profit from that mark . . . and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264 (4th Cir. 2001). The Magistrate Judge applies this two-pronged test to the well-pled allegations of fact contained in the Complaint to determine whether the new registrant violated Plaintiff's rights in the domain name <x3.com>.

Under the second prong—registers or traffics in a domain name identical or similar to a distinctive mark—the new registrant transferred and registered the domain name <x3.com>, which is identical to Plaintiff's distinctive mark, without authorization. This element is therefore easily satisfied.

As to the first prong—registers with "a bad faith intent to profit from that mark"—courts consider a non-exhaustive list of nine factors to determine bad faith.[2] 15 U.S.C. § 1125(d)(1)(B)(i); *see Venetian Casino Resort, LLC v. Venetiangold.Com*, 380 F. Supp. 2d 737, 740 (E.D. Va. 2005). Based on Plaintiff's well-pled allegations of fact, the new registrant unlawfully took control of Plaintiff's domain name in order to redirect the income it produced and to resell the domain name for profit, thereby depriving Plaintiff of this income and interfering with his ability to communicate with his customers, all with a

---

[2] The relevant portion of the statute reads as follows:
A court may consider factors such as, but not limited to–
(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.
15 U.S.C. § 1125(d)(1)(B)(i).

bad-faith intent to profit from Plaintiff's mark. Notably, the registrant appears to have no personal, business, or noncommercial connection to either Plaintiff's mark or the domain name <x3.com>, which appears to have been registered under purposefully misleading or inaccurate contact information. This unauthorized transfer has prevented Plaintiff from using and exercising control over his domain name and diverted profit away from Plaintiff's domain monetization business. Having considered the statutorily enumerated factors, the Magistrate Judge recommends a finding that the new registrant transferred and registered Plaintiff's domain name <x3.com> with a bad-faith intent to profit from Plaintiff's mark in violation of the ACPA.

In an *in rem* cybersquatting action, Plaintiff's remedies are limited to either the transfer of the domain names to the owner of the mark or the forfeiture or cancellation of the domain names. 15 U.S.C. § 1124(d)(2)(D)(i); *see Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610 (E.D.Va. 2003) (discussing a court's power to transfer or cancel a domain when the location of the registry is within that judicial district). Here, the <x3.com> domain name's registry, VeriSign, Inc., is located within this judicial district, and Plaintiff has properly perfected service under the ACPA. Accordingly, the Court may properly enter default judgment and order the .com domain name registry, and any relevant domain name registrars, to transfer ownership of the domain name <x3.com> to Plaintiff. *See United Press Int'l, Inc.*, No. 1:13-CV-807 (E.D. Va. Oct. 18, 2013).

## VI. Recommendation

The Magistrate Judge recommends that default judgment be entered *in rem* against the domain name <x3.com> in favor of Plaintiff Anthony J. Alfieri-Crispin and that

ownership and control of the domain name <x3.com> be transferred to Plaintiff. To that end, the undersigned further recommends that VeriSign, Inc., be required to transfer ownership of the domain name <x3.com> to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C) and that the Court enter an order containing the specific language requested on page 2 of Plaintiff's Motion for Default Judgment.

## VII. Notice

Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

August 12, 2015
Alexandria, Virginia